1   RODGER M. LANDAU (State Bar No. 151456)
    JON L.R. DALBERG (State Bar No. 128259)
2   LANDAU GOTTFRIED & BERGER LLP
    1801 Century Park East, Suite 1460
3   Los Angeles, California  90067
    Telephone: (310) 557-0050
4   Facsimile: (310) 557-0056
    rlandau@lgbfirm.com
5   jdalberg@llgbfirm.com

6

    Counsel for Vineyard National Bancorp
7
                    UNITED STATES BANKRUPTCY COURT
8
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
                          RIVERSIDE DIVISION
10

11

12  In re                               Bk. No.  6:09-bk-26401-RN

13  VINEYARD NATIONAL BANCORP,           Chapter 11

14            Debtor.                    **NOTICE OF SUPPLEMENTAL FILING OF
                                         (1) EXHIBITS B, C AND E TO
15                                       DISCLOSURE STATEMENT IN SUPPORT
                                         OF THE DEBTOR'S JOINT PLAN OF
16                                       LIQUIDATION OF THE DEBTOR AND
                                         THE OFFICIAL COMMITTEE OF
17                                       UNSECURED CREDITORS.**

18
                                         **Disclosure Statement Hearing**
19
20                                       Date:  January 21, 2010
                                         Time:  2:00 p.m.
21                                       Place:  Courtroom 301
                                                 3420 Twelfth Street
22                                               Riverside, CA 92501-3819

23                                       **Confirmation Hearing**

24
25                                       **Date:**
                                         **Time:**
26                                        **Place:**

27

28

LANDAU
GOTTFRIED &
BERGER LLP

1    **TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY**

2    **JUDGE; THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; THE OFFICE OF**

3    **THE UNITED STATES TRUSTEE; FIRST TENNESSEE BANK, N.A.; AND PARTIES**

4    **REQUESTING SPECIAL NOTICE:**

5    PLEASE TAKE NOTICE Vineyard National Bancorp, debtor and debtor in possession in the above

6    captioned chapter 11 case (the "Debtor") and the Official Committee of Unsecured Creditors have

7    filed:

8        (1)    Exhibits B, C and E (collectively "Exhibits") to the *Disclosure Statement in Support*

9    *of the Joint Plan of Liquidation of the Debtor and the Official Committee of Unsecured Creditors*

10   ("Disclosure Statement"). Copies of the Exhibits are attached hereto as Exhibits "A," "B" and "C,"

11   respectively.

12       (2)    Certain revisions to the Disclosure Statement. Copies of the relevant pages of the

13   Disclosure Statement, marked to show such revisions compared to the Disclosure Statement as

14   previously filed [Docket No. 81], are attached hereto as Exhibit "D."

15       (3)    Certain revisions to the *Joint Plan of Liquidation of the Debtor and the Official*

16   *Committee of Unsecured Creditors* [Docket # 83] ("Plan") and Exhibit 3 thereto, the Liquidating Trust

17   Agreement (as defined in the Plan). Copies of the relevant pages f the Plan and Liquidating Trust

18   Agreement, marked to show changes, are attached hereto as Exhibit "E."

19   Clean copies of the Exhibits, the revised Disclosure Statement, Plan and Liquidating Trust

20   Agreement may be obtained from the Court, or from counsel to the Debtor by written request at te

21   address set forth above.

22

23   Dated: January 5, 2009           LANDAU GOTTFRIED & BERGER LLP

24                                       RODGER M. LANDAU
JON L.R. DALBERG

25

26                                         By:_____

27                                      Jon L.R. Dalberg
Counsel for Vineyard National Bancorp

28

# EXHIBIT A

EXHIBIT "B"

**Projected Cash as of Confirmation**

**Vineyard National Bancorp**

| | Note | Dec-09 | Jan-10 | Feb-10 | Mar-10 | LOW TOTAL | | HIGH TOTAL |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 1 | 1,898,267 | 1,648,141 | 1,534,325 | 1,376,611 | 1,898,267 | | 1,898,267 |
| **Income** | | | | | | | | |
| Insurance Policy Refunds (due) | 2 | - | 1,208 | - | - | 1,208 | | 1,208 |
| Employment Contract Deposit Recovery | 3 | - | 42,690 | - | - | 42,690 | | 42,690 |
| Preference Recoveries | 4 | - | - | - | - | - | Unknown | |
| D&O Claims and Estate Cause of Action | 5 | - | - | - | - | - | Unknown | |
| IRS Refund for 2008 or 2009 NOL | 6 | - | - | - | - | - | Unknown | |
| **Total Income** | | - | 43,898 | - | - | 43,898 | | 43,898 |
| **Expenses** | | | | | | | | |
| United States Trustee Fee | | 975 | - | - | 975 | 1,950 | | 1,950 |
| Legal-Bankruptcy Counsel (debtor) | 7 | 116,437 | 25,000 | 25,000 | 25,000 | 191,437 | | 203,155 |
| Legal-Special Counsel (debtor) | 8 | - | - | - | 20,000 | 20,000 | | 21,224 |
| Legal-Creditors Committee Counsel | 9 | 100,000 | 100,000 | 100,000 | 100,000 | 400,000 | | 424,483 |
| Allowed Indenture Trustee Fees (est) | 10 | - | - | - | 120,000 | 120,000 | | 127,345 |
| Other Professional Fees | 11 | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 | | 4,245 |
| Salaries & Employer Taxes | | 28,000 | 28,000 | 28,000 | 28,000 | 112,000 | | 112,000 |
| Controller/Accounting Services | | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | | 6,367 |
| Rent & Utilities | | 2,039 | 2,039 | 2,039 | 2,039 | 8,156 | | 8,655 |
| Office Supplies | | 100 | 100 | 100 | 100 | 400 | | 424 |
| Postage & Courier | | 50 | 50 | 50 | 50 | 200 | | 212 |
| Travel Expenses | 12 | 25 | 25 | 25 | 25 | 100 | | 106 |
| **Total Expenses** | | 250,126 | 157,714 | 157,714 | 298,689 | 864,243 | | 910,167 |
| **Net Cash Flow** | | (250,126) | (113,816) | (157,714) | (298,689) | (820,345) | | (866,269) |
| **Ending Cash Balance** | | 1,648,141 | 1,534,325 | 1,376,611 | 1,077,922 | 1,077,922 | | 1,031,998 |

**Note    Description**

1   Beginning Cash Balance for December is based on the ending cash balance in the November Monthly Operating Report filed December 15, 2009.

2   Due to the cancellation of the Kidnap & Ransom policy, a refund of approximately $1,208.00 is due.  That refund is potentially subject to allocation between the Debtor and the FDIC as Receiver for Vineyard Bank In addition to the refund under the Kidnap & Ransom policy, an additional refund of approximately $20,505.00 may be due as a result of the cancellation of the Financial Institution Bond by the carrier.  The Debtor believes that its coverage under the Financial Institution Bond may not be terminated by the carrier and therefore may reject the receipt of the refund and otherwise seek to preserve its rights under the Financial Institution Bond.  See Article III(D)(5) of the Disclosure Statement for further information.

3   Debtors pro-rata share of the $180,000 deposit under Glenn Terry's employment contract as the former President & CEO is approximately $90,000.  Pursuant to a motion granted on September 4, 2009 (Docket No. 36) the contract was rejected and the Debtor was permitted to remove the funds from City National Bank.  However, as the account was vested in the name of Vineyard Bank, the Debtor had been working through the administrative process for the release of funds with the FDIC.  The Debtor previously received refunds of $23,483.04 under the package policy and $36,748.60 under the workers compensation policy which were subject to allocation between Vineyard Bank (or the FDIC as receiver for Vineyard Bank) and the Debtor.  As a result the Debtor and the FDIC have agreed in principal to offset of the FDIC's share of the insurance refunds against the $90,000 owed the Debtor in the City National Bank account, which is anticipated to result in a net payment of approximately $42,690.00 to the Debtor.

4   The amount of the potential recoveries are unknown.  See Exhibit E to the Disclosure Statement for more information.

5   The value of the potential claims are unknown.  They include D&O Claims and any Estate Cause of Action (each as defined in the Plan).  The Creditors Committee filed suit against certain directors and officers on December 21, 2009.

6   Pursuant to Revenue Ruling 2009-52, the Debtor may be able to carry back Net Operating Losses for a period of 5 years resulting in an additional tax refund of approximately $21.8 million.  Any such refund may be subject to allocation between the FDIC, as Receiver for Vineyard Bank, and the Debtor. See Article III, Section (D)(9) of the Disclosure Statement for more information.

7   Estimates provided by Landau & Berger, LLP, as bankruptcy counsel.  The December 2009 figure includes (i) $26,286.18 in accrued, unpaid fees for October 2009 (or $43,117.92 less the remainder of the retainer of $16,831.74), (ii) $65,151.18 in accrued, unpaid fees for November 2009, plus (iii) a fee estimate of $25,000 per month through the end of March (or a total of an additional $100,000).

8   Estimates provided by Landau & Berger, LLP on behalf of Manatt, Phelps & Phillips, LLP, as special counsel.  The estimate is for an additional $20,000 above the remaining retainer of $109,973.01 as of the end of November 2009.

9   Estimates provided by Landau & Berger, LLP based on discussions with Winston & Strawn, LLP, Creditors Committee Counsel.  The estimate is for total fees of $249,000, which was straight lined over the 4 month period.

10  Allowed Indenture Trustee Fees (as defined in the Plan).  The estimate range provided by Winston & Strawn, LLP, as Creditors Committee counsel, was approximately $100,000 to $120,000.  See the Plan.

11  Includes the cost of SEC filings through Vintage Filings and transfer agent costs through Computershare

12  Includes the cost of mileage and parking related to hearings in Riverside

EXHIBIT A

3

# EXHIBIT B

Exhibit C

**Chapter 7 Liquidation Analysis - Cash Flow Basis**

Vineyard National Bancorp

| | Note | LOW TOTAL | HIGH TOTAL | |
|---|---|---|---|---|
| Beginning Cash Balance as of March 31, 2010 | 1 | 1,031,998 | 1,077,922 | |
| **Income** | | | | |
| Insurance Policy Refunds | 2 | - | - | Unknown |
| Preference Recoveries | 3 | - | - | Unknown |
| Creditor Committee Claims | 4 | - | - | Unknown |
| IRS Refund for 2008 or 2009 NOL | 5 | - | - | Unknown |
| **Total Income** | | - | - | |
| **Expenses** | | | | |
| United States Trustee Fee | 6 | 1,950 | 1,950 | |
| CH 7 Trustee Fees; pursuant to 11 U.S.C. Section 326(a) | 7 | 60,118 | 60,118 | |
| CH 7 Trustee Counsel | 8 | 150,000 | 200,000 | |
| CH 7 Trustee Costs of Administration | 8 | 20,000 | 25,000 | |
| **Sub-Total CH 7 Administration Expenses** | | 232,068 | 287,068 | |
| **Net Cash Flow** | | (232,068) | (287,068) | |
| **Available for Distribution** | | 799,930 | 790,854 | |

| Distribution Analysis - Chapter 7 | | LOW Remaining Balance | LOW Amount Distributed | LOW Distribution Ratio | HIGH Remaining Balance | HIGH Amount Distributed | HIGH Distribution Ratio |
|---|---|---|---|---|---|---|---|
| Class 1 - Other Priority Claims | 9 | - | 799,930 | - | 0.000% | 790,854 | - | 0.000% |
| Class 2 - Secured Claims | 10 | - | 799,930 | - | 0.000% | 790,854 | - | 0.000% |
| Class 3 - General Unsecured Claims | 11 | 54,043,791 | - | 799,930 | 1.480% | - | 790,854 | 1.463% |
| Class 4 - Indenture Claims | 12 | 127,667,964 | - | - | 0.000% | - | - | 0.000% |

**Note | Description**

1   Assumes ending cash as of March 31, 2010.  See "Ending Cash Balance" on Exhibit B

2   An additional refund of approximately $20,505.00 may be due as a result of the cancellation of the Financial Institution Bond by the carrier.  The Debtor believes that its coverage under the Financial Institution Bond may not be terminated by the carrier and therefore may reject the receipt of the refund and otherwise seek to preserve its rights under the Financial Institution Bond.  See Article III(D)(5) of the Disclosure Statement for further information.

3   The amount of the potential recoveries are unknown.  See Exhibit E to the Disclosure Statement for more information.

4   The value of the potential claims are unknown.  They include D&O Claims and any Estate Cause of Action (each as defined in the Plan).  The Creditors Committee filed suit against certain directors and officers on December 21, 2009.

5   Pursuant to Revenue Ruling 2009-52, the Debtor may be able to carry back Net Operating Losses for a period of 5 years resulting in an additional tax refund of approximately $21.8 million.  Any such refund may be subject to allocation between the FDIC, as Receiver for Vineyard Bank, and the Debtor.  See Article III, Section (D)(9) of the Disclosure Statement for more information.

6   Assumes $975 per quarter for 2 quarters

7   Statutory fees pursuant to 11 U.S.C. Section 326(a)

8   Estimates provided by Landau & Berger, LLP

9   Assumes -0- other priority claims

10  As described in the Plan, there are -0- secured claims

11  As of the Petition Date, assumes a total of $54,043,791 in general unsecured claims, of which $50,825,395.68 consists of amounts owed to First Tennessee Bank

12  As of the Petition Date, assumes a total of $127,667,964 owed to indenture holders

EXHIBIT B

4

EXHIBIT C

## Exhibit E

## Potential Preference Payments

### I.    Payments to creditors made within ninety days of the Petition Date

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| FIRST BANKERS TRUST SERVICES<br>2321 Kochs Lane, PO Box 4005<br>Quincy, IL 62305-4005 | 5/20/09 | $6,134.20 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square, 555 Thirteenth Street, NW<br>Washington, DC 20004 | 4/10/09 | $17,957.24 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 4/10/09 | $28,996.74 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 4/28/09 | $45,774.21 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 4/28/09 | $25,388.09 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 4/28/09 | $12,959.30 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 4/28/09 | $9,754.13 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 6/17/09 | $29,654.47 | $0.00 |
| R.K.SCHAAF & ASSOCIATES<br>21650 Oxnard Street, Suite 1450<br>Woodland Hills, CA 91367 | 5/20/09 | $12,670.00 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 6/29/09 | $12,491.77 | $0.00 |
| Premier Office Centers, LLC<br>2102 Business Center Drive<br>Irvine, CA 92612 | 7/7/09 | $5,256.62 | $0.00 |

EXHIBIT C
5

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 7/16/09 | $23,878.85 | $0.00 |
| HOGAN & HARTSON LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | 7/17/09 | $27,617.50 | $0.00 |

## II.  Payments to insiders made within one year of the Petition Date*

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Charles Keagle<br>8651 Madrone Avenue<br>Rancho Cucamonga, CA 91730<br>Former Director | 7/7/08 | $4,500.00 | $0.00 |
| Charles Keagle<br>8651 Madrone Avenue<br>Rancho Cucamonga, CA 91730<br>Former Director | 7/10/08 | $4,500.00 | $0.00 |
| Charles Keagle<br>8651 Madrone Avenue<br>Rancho Cucamonga, CA 91730<br>Former Director | 8/13/08 | $4,500.00 | $320,856.70 |
| David Buxbaum<br>414 Yale Avenue<br>Claremont, CA 91711<br>Director | 7/7/08 | $4,500.00 | $0.00 |
| David Buxbaum<br>414 Yale Avenue<br>Claremont, CA 91711<br>Director | 7/10/08 | $4,500.00 | $0.00 |
| David Buxbaum<br>414 Yale Avenue<br>Claremont, CA 91711<br>Director | 8/13/08 | $4,500.00 | $26,643.60 |
| Frank Alvarez<br>1080 W. 22nd Street<br>Upland, CA 91784<br>Former Director | 7/7/08 | $4,500.00 | $0.00 |
| Frank Alvarez<br>1080 W. 22nd Street<br>Upland, CA 91784<br>Former Director | 7/10/08 | $4,500.00 | $0.00 |
| Frank Alvarez<br>1080 W. 22nd Street<br>Upland, CA 91784<br>Former Director | 8/13/08 | $4,500.00 | $435,329.98 |

EXHIBIT C

6

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Candace Schaller<br>106 Harborwoods Place<br>Newport Beach, CA 92660<br>    Former employee | 5/21/09 | $6,500.00** | $0.00 |
| Yvonne Stroh<br>2098 Kelly Avenue<br>Upland, CA 91786<br>    Beneficiary of Deceased Former<br>Director | 5/1/08 | $43,889.00 | $47,908.21 |
| Vineyard Bank, N.A.<br>1260 Corona Pointe Court<br>Corona, CA 92879 | 2/26/09 | $1,000,000.00 | $0.00 |

*See below regarding distribution and compensation to insiders in the 1 year period prior to the Petition Date
**Pro rata share of severance payment allocated to the Debtor.

## III.    Distributions given to an insider of the Debtor, including compensation in any form, bonuses, loans, stock, redemptions, and options exercised

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | TYPE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|---|
| Glen C. Terry<br>18 Lighthouse Ct.<br>Napa, CA 94559<br>    Former President, CEO & Director | Various | Bancorp share of total estimated compensation (50%) | $216,000.00[a] | $0.00 |
| James G. LeSieur<br>5 Ironwood Drive<br>Newport Beach, CA 92660<br>    Former President, CEO, & Director<br>    Current CFO | Various | Bancorp share of total estimated compensation (25% in 2009; 50% in 2008) | $198,000.00[a] | $15,592.12[b] |
| Donald Pelgrim<br>26601 Avenida Veronica<br>Mission Viejo, CA 92691<br>    Chief Administrative Officer | Various | Bancorp share of total estimated compensation (10% in 2009; 30% in 2008) | $63,750.00[a] | $0.00 |
| Lucilio Manuel Borges Couto<br>9330 Burnet Ave<br>North Hills, CA 91343<br>    Former CCO & Chief Risk Officer | Various | Bancorp share of total estimated compensation (10%) | $18,233.00[c] | $0.00 |
| Gordon Fong<br>103 Ambiance<br>Irvine, CA 92603<br>    Former Chief Financial Officer | Various | Bancorp share of total estimated compensation (30%) | $40,625.00[d] | $0.00 |
| John Christoper Walsh<br>32451 Seven Seas Drive<br>Dana Point, CA 92629<br>    Former Chief Banking Officer | Various | Bancorp share of total estimated compensation (5%) | $5,250.00[e] | $0.00 |

EXHIBIT C
7

| | | | | |
|---|---|---|---|---|
| Terra Hagel<br>47 Cambridge Court<br>Coto de Caza, CA 92679<br>   Former SVP, Secretary | Various | Bancorp share of total<br>estimated<br>compensation<br>(40%) | $61,750.00 [a] | $0.00 |
| Erica Douglas<br>97 Waterman<br>Irvine, CA 92602<br>   Former SVP, Finance | Various | Bancorp share of total<br>estimated<br>compensation<br>(15% in 2009; 20% in<br>2008) | $27,153.00 [a] | $0.00 |
| Scott Hinkle<br>1 Bay Drive<br>Laguna Beach, CA 92651<br>   Former AVP, Finance | Various | Bancorp share of total<br>estimated<br>compensation<br>(10% in 2009; 15% in<br>2008) | $11,695.00 [a] | $0.00 |
| Karyn Elkington<br>1703 N. Summer Avenue<br>Claremont, CA 91711<br>   Former SVP, Human Resources | Various | Bancorp share of total<br>estimated<br>compensation<br>(2% in 2009; 10% in<br>2008) | $13,660.00 [a] | $0.00 |
| Candace Schaller<br>106 Harborwoods Place<br>Newport Beach, CA 92660<br>   Former SVP, Director of Audit | Various | Bancorp share of total<br>estimated<br>compensation<br>(10% in 2009; 5% in<br>2008) | $10,867.00 [f] | $0.00 |
| Maureen Clark<br>5371 Brookhill Drive<br>Yorba Linda, CA 92886<br>   Former EVP, Chief Operating Officer | Various | Bancorp share of total<br>estimated<br>compensation<br>(-0-% in 2009; 10% in<br>2008) | $10,500.00 [g] | $0.00 |
| Jean Hurtik<br>31166 Flying Cloud Drive<br>Laguna Niguel, CA 92677<br>   Former AVP, Finance | Various | Bancorp share of total<br>estimated<br>compensation<br>(-0-% in 2009; 10% in<br>2008) | $6,650.00 [g] | $0.00 |
| Douglas Kratz<br>852 Middle Road<br>P.O. Box 1030<br>Bettendorf, IA 52722<br>   Chairman of the Board | Various | Bancorp share of total<br>estimated<br>compensation | $0.00 | $0.00 |
| Perry Hansen<br>852 Middle Road<br>P.O. Box 1030<br>Bettendorf, IA 52722<br>   Director | Various | Bancorp share of total<br>estimated<br>compensation | $0.00 | $0.00 |
| David Buxbaum<br>567 West 8th Street<br>Claremont, CA 91711<br>   Director | Various | Bancorp share of total<br>estimated<br>compensation | See above | See above |

EXHIBIT C

8

| | | | | |
|---|---|---|---|---|
| Harice "Dev" Ogle<br>858 Lunar Court<br>Rohnert Park, CA 94928<br>Former Director | Various | Bancorp share of total estimated compensation | $0.00 | $0.00 |
| Lester Strong<br>2886 Lorencita Drive<br>Santa Maria, CA 93455<br>Former Director | Various | Bancorp share of total estimated compensation | $0.00 | $0.00 |
| Charles Keagle<br>8651 Madrone Avenue<br>Rancho Cucamonga, CA 91730<br>Former Director | Various | Bancorp share of total estimated compensation | See above | See above |
| Frank Alvarez<br>1080 W. 22nd Street<br>Upland, CA 91784<br>Former Director | Various | Bancorp share of total estimated compensation | See above | See above |
| Joel Ravitz<br>11111 Santa Monica Blvd, Suite 1450<br>Los Angeles, CA 90025 | Various | Bancorp share of total estimated compensation | $0.00 | $634,537.95[b] |
| Robb Quincey<br>460 N. Euclid Avenue<br>Upland, CA 91786 | Various | Bancorp share of total estimated compensation | $0.00 | $141,789.83[b] |

[a] Estimated amount of compensation expenses allocated to the Debtor under an Intercompany Expense Sharing Agreement between the Debtor and the Bank (the "Expense Sharing Agreement") for the last 6 months of 2008 and the first 6 months of 2009. The amounts listed are the Debtor's pro rata share paid by Debtor under the agreement.

[b] Amount owed under the Directors Deferred Compensation Plan.

[c] Estimated amount of compensation expenses allocated to the Debtor under the Expense Sharing Agreement for the last 6 months of 2008 and through Mr. Couto's resignation on April 9, 2009.

[d] Estimated amount of compensation expenses allocated to the Debtor under the Expense Sharing Agreement for 5 months in 2008, through Mr. Fong's resignation on December 1, 2008.

[e] Estimated amount of compensation expenses allocated to the Debtor under the Expense Sharing Agreement for 4 months in 2008, through Mr. Walsh's resignation in November 2008.

[f] Estimated amount of compensation expenses allocated to the Debtor under the Expense Sharing Agreement for the last 6 months of 2008 and through Ms. Schaller's separation on May 22, 2009.

[g] Estimated amount of compensation expenses allocated to the Debtor under the Expense Sharing Agreement for the last 6 months of 2008. There was no allocation for Ms. Clark or Ms. Hurtik's services under the Expense Sharing Agreement for 2009.

Note that no allocation information was provided for the following individuals whose termination of employment was outside the 1 year period pre-petition:
- Rick Hagan, Executive Vice President, Chief Credit Officer and Chief Operating Officer.
- Michael Cain, Executive Vice President, Chief Lending Officer.
- Terry Snavely, Senior Vice President, Controller.

Further, no allocation was made for Marietta Hix, who merely provided administrative support to the board of the Debtor. If such allocation were made, the allocation would be $5,640.00 based on a 15% allocation for 2008 and $-0- for 2009 as there was no percentage of compensation allocated for Ms. Hix under the Expense Sharing Agreement for 2009.

EXHIBIT C

EXHIBIT D

RODGER M. LANDAU (State Bar No. 151456)
JON L. R. DALBERG (State Bar No. 128259)
SHARON M. KOPMAN (State Bar No. 164449)
LANDAU GOTTFRIED & BERGER LLP
1801 Century Park East, Suite 1460
Los Angeles, California  90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056
jdalberg@~~lblawllp~~lgbfirm.com
rlandau@~~lblawllp~~lgbfirm.com
skopman@~~lblawllp~~lgbfirm.com

Counsel for Vineyard National Bancorp

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>VINEYARD NATIONAL BANCORP,<br><br>      Debtor. | Case No.  6:09-bk-26401-RN<br><br>Chapter 11<br><br>**DISCLOSURE STATEMENT IN SUPPORT OF THE DEBTOR'S JOINT PLAN OF LIQUIDATION OF THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>**<u>Disclosure Statement Hearing</u>**<br><br>**Date:**  January 21, 2010<br>**Time:**  2:00 p.m.<br>**Place:**  Courtroom 301<br>        3420 Twelfth Street<br>        Riverside, CA 92501-3819<br><br>**<u>Confirmation Hearing</u>**<br><br>**Date:**<br>**Time:**<br>**Place:** |

LANDAU & BERGER
LLP

1

## PLAN OVERVIEW

The Plan provides for the disposition of all assets of the Debtor's Estate through the establishment of a Liquidating Trust for the benefit of the Holders of Allowed Claims consistent with the priority provisions of the Bankruptcy Code, as provided for in the Debtor's Plan of Liquidation.  Remaining assets, to the extent not converted to cash or other proceeds as of the Effective Date, will be sold or otherwise disposed of after the Effective Date, with all net cash proceeds to be distributed to Holders of Allowed Claims as provided for in the Plan.

| Plan Summary | | | | |
|---|---|---|---|---|
| **Class** | **Treatment** | **Property Distributed** | **Recovery (approx.)** | **Voting Status** |
| **Class 1**: Other Priority Claims | Payment in Cash in full | Cash | 100% of Allowed Claim | Unimpaired - **not** entitled to vote (deemed to accept) |
| **Class 2**: Secured Claims | Retention of all legal, equitable and contractual rights | Cash and/or Property | 100% of Allowed Secured Claim | Unimpaired - **not** entitled to vote (deemed to accept) |
| **Class 3**: General Unsecured Claims | Pro Rata distribution of Available Cash in the Liquidating Trust | Cash | | Impaired - entitled to vote |
| **Class 4**: Subordinated Claims of Holders of Indenture Trustee Claims and Unpaid Indenture Trustee Fees | Each Holder of a Class 4 Claim shall be allocated a Pro Rata share of each Distribution available to Holders of Class 3 Claims; provided, however, that the amount of distributions to Holders of Allowed Class 4 Claims shall be paid (i) first on account of unpaid Indenture Trustee Fees, ~~including Allowed Indenture Trustee Fees accrued prior to the Petition Date~~ in an estimated amount of $100,000 to $120,000 and (ii) second on account of the Allowed FTBN Claim, until such time as the Allowed FTBN Claim is satisfied in full, after which time distributions to Holders of Allowed Indenture Trustee Claims shall be made.  The Plan further sets forth a process by which challenges to the priority | Cash | | Impaired – entitled to vote |

LANDAU & BERGER
LLP

1

from its subsidiaries, the Debtor's principal source of funds was dividends that were paid by the Bank.

**B.    The Debtor's Financing.**

**1.    Statutory Business Trusts**

Between December 2001 and May 2006, the Debtor raised approximately $115 million of capital through ten (10) Statutory Business Trusts.  Information regarding each of the Statutory Business Trusts is set forth in the table below:

| Statutory Business Trust Name: | Trustee: | Indenture Information: | Dated: | ~~Indenture~~Debenture Principal Amount |
|---|---|---|---|---|
| VST I - Vineyard Statutory Trust I | U.S. Bank | Indenture – Floating Rate Junior Subordinated Deferrable Interest Debentures – Due 2031 | 12/18/2001 | $12,372,000 |
| VST II - Vineyard Statutory Trust II | Wilmington Trust | Indenture – Floating Rate Junior Subordinated Deferrable Interest Debt Securities Due 2033 | 12/19/2002 | $5,155,000 |
| VST III – Vineyard Statutory Trust III | Wilmington Trust | Indenture – Floating Rate Junior Subordinated Debt Securities Due 2033 | 9/25/03 | $10,310,000 |
| VST IV – Vineyard Statutory Trust IV | Wilmington Trust | Indenture – Floating Rate Junior Subordinated Debt Securities Due 2034 | 12/19/03 | $10,310,000 |
| VST V – Vineyard Statutory Trust V | BNYMTC | Indenture – Junior Subordinated Debt Securities Due 2034 | 3/25/04 | $10,310,000 |
| VST VI – Vineyard Statutory Trust VI | BNYMTC | Indenture - Indenture – Floating Rate Junior Subordinated Debt Securities Due 2034 | 5/18/04 | $12,372,000 |
| VST VII – Vineyard Statutory Trust VII | Wells Fargo | Indenture - Indenture – Floating Rate Junior Subordinated Debt Securities Due 2034 | 12/22/04 | $10,310,000 |
| VST VIII – Vineyard Statutory Trust VIII | Wilmington Trust | Indenture - Indenture – Floating Rate Junior Subordinated Debt Securities Due 2034 | 4/15/05 | $10,310,000 |
| VST IX – Vineyard Statutory | Wilmington Trust | Indenture - Indenture – Floating Rate Junior | 8/19/05 | $15,464,000 |

| Statutory Business Trust Name: | Trustee: | Indenture Information: | Dated: | ~~Indenture~~Debenture Principal Amount |
|---|---|---|---|---|
| Trust IX | | Subordinated Debt Securities Due 2034 | | |
| VST XI – Vineyard Statutory Trust XI | Wilmington Trust | Indenture - Indenture – Floating Rate Junior Subordinated Debt Securities Due 2034 | 5/16/06 | $18,557,000 |

The Debtor sponsored the Statutory Business Trusts for the purpose of issuing ~~selling and administering~~ trust preferred securities.  The Statutory Business Trusts sold the trust preferred securities to investors and then used the proceeds of the sale of the trust preferred securities to purchase from the Debtor junior subordinated deferrable interest debentures (the "Debt Securities") pursuant to the Statutory Trust Indentures.  The Debt Securities are ~~owned by and~~ held of record in the name of the respective Statutory Trust Trustees in trust for the benefit of their respective Statutory Business Trusts.  Interest payments on the Debt Securities paid by the Debtor to the Statutory Trust Trustees were used to fund the Statutory Business Trust's distributions to the ~~preferred security holders~~Trust Securities.[1]  The Debtor executed guarantees for the trust preferred security holders of each Statutory Business Trust that guaranteed that if the Debtor made an interest payment to the Statutory Trust Trustees owing under the Debt Securities, the Debtor guaranteed that the Statutory Trust Trustee would pay the dividend to the holders of the trust preferred securities.

The Statutory Business Trusts issued two types of trust preferred securities: (i) Capital Securities and (ii) Common Securities (collectively, the "Trust Preferred Securities").[2]  The Debtor owns 100% of the Common Securities issued by each of the Statutory Business Trusts, which Common Securities equal an approximately 3% minority interest in the Statutory Business Trusts.

---

[1]     The interest rate under the Debt Securities is based on a 3 month LIBOR index plus the following margin: 3.06% under VST I, 3.35% under VST II, 3.05% under VST III, 2.85% under VST IV, 2.85% under VST V, 2.85% under VST VI, 2.00% under VST VII, 2.25% under VST VIII, 1.70% under VST IX, and 1.60% under VST XI.

~~[2]     "Capital Securities" and "Common Securities" shall have the meanings attributed to them in the respective Statutory Business Trusts.~~

1   The holders of Capital Securities own the remaining majority interest in the respective Statutory

2   Business Trusts.

3          Upon an Event of Default (as defined in the respective Statutory Business Trusts), the

4   rights of the holders of Common Securities to receive payments of distributions from the Statutory

5   Business Trusts are subordinated to the rights of the holders of the Capital Securities to receive the

6   same.[3]  Upon the filing of the Chapter 11 Case by the Debtor, the Statutory Trust Trustees are

7   required to dissolve the Trust as expeditiously as the Statutory Trust Trustee determines is

8   practical and liquidate the assets owned by the Statutory Business Trust.[4]

9          Article XV of each of the Statutory Trust Indentures provides that payment due on the Debt

10  Securities is subordinated and junior in right of payment to the prior payment in full of all Senior

11  Indebtedness (as defined in each of the Statutory Trust Indentures) of the Debtor, whether

12  outstanding on the date of the Statutory Trust Indenture or thereafter incurred.  To the extent the

13  Statutory Trust Trustees receive a distribution prior to Senior Indebtedness being paid in full, the

14  Statutory Trust Trustees are required to hold the distribution in trust for the Senior Indebtedness;

15  provided, however, the subordination provisions do not apply to the Statutory Trust Trustees'

16  Claims for the reasonable fees, expenses, disbursements and advances (including the reasonable

17  compensation, expenses and disbursements of their respective agents and counsel) incurred by the

18  Statutory Trust Trustees. trustee fees and costs of administration of the Statutory Business Trusts.

19         The cash raised by the Statutory Business Trusts was typically down-streamed by the

20  Debtor to the Bank to provide adequate capital to support the Bank's strategic plan initiatives,

21  including facilitating organic growth, the acquisition of Rancho Bank, a California-chartered

22  commercial bank ("Rancho Bank"), fulfilling regulatory capital requirements, and providing

23  capital and liquidity for general operating purposes.

24         **2.      Junior Subordinated Indenture Unrelated to Statutory Business Trusts**

25         In or about December 2002, to raise additional capital, the Debtor issued Floating Rate

26  Junior Subordinated Debentures Due December 26, 2017 (the "Debentures Due 2017") in the

27

28  [3]      *See* Annex 1 to the Statutory Business Trusts, Paragraph 9.
    [4]      *See* Annex 1 to the Statutory Business Trusts, Paragraph 3.

LANDAU & BERGER
LLP

12

EXHIBIT D

14

1    aggregate principal amount of $5,000,000 and U.S. Bank is the ~~T~~trustee.  The Debentures Due

2    2017 ~~issued under the Junior Subordinated Indenture~~ bear a floating rate of interest of 3.05% over

3    the three month LIBOR and required quarterly interest payments.  Like the Statutory Trust

4    Indentures, Article XV of the Junior Subordinated Indenture provides that that payment due on the

5    Debentures Due 2017 is subordinated and junior in right of payment to the prior payment in full of

6    all Senior Indebtedness[5] (as defined in the Junior Subordinated Indenture) of the Debtor, whether

7    outstanding on the date of the Junior Subordinated Indenture or thereafter incurred.  To the extent

8    the Junior Subordinated Indenture Trustee receives a distribution prior to Senior Indebtedness

9    being paid in full, the Junior Subordinated Indenture Trustee is required to hold the distribution in

10    trust for the Senior Indebtedness; <u>provided</u>, <u>however</u>, the subordination provisions do not apply to

11    the Junior Subordinated Indenture Trustee's Claims for the reasonable fees, expenses,

12    disbursements and advances (including the reasonable compensation, expenses and disbursements

13    of their respective agents and counsel) incurred by ~~trustee fees and the costs of administration of~~

14    the Junior Subordinated Indenture Trustee.

15         Like the proceeds from the Statutory Trust Indentures, these funds were also down-

16    streamed to the Bank to support the Bank's strategic plan initiatives.

17                        **3.      Senior Secured Lender - FTBN**

18         On or about March 17, 2006, the Debtor and First Tennessee Bank, National Association

19    ("FTBN") entered into a Loan Agreement (the "Loan Agreement")) wherein FTBN committed to

20    make a revolving loan in the amount of Seventy Million Dollars ($70,000,000).  The Debtor

21    executed a Promissory Note on March 17, 2006 evidencing the loan ("Loan"), which Note was

22    amended and restated on March 29, 2007 (the "Note").  The original Maturity Date (as defined in

23    the Loan Agreement) for the Loan was one year from the date that the Note was executed.  The

24    Maturity Date was ultimately extended to May 22, 2009 pursuant to the Modification Agreements

25    (as defined below). The Note was secured by a first priority security interest in all 1,218,700 of

26    issued and outstanding shares of common stock (the "Pledged Shares") in Debtor's wholly-owned

27

28

1    Class will receive various types of consideration, thereby giving effect to the different rights of the

2    holders in each Class.

3        In general, under the Plan, on the Effective Date, all of the Estate's assets will vest in the

4    Liquidating Trust and the Allowed Administrative Expenses, Allowed Priority Tax Claims, and the

5    Allowed Class 1 Claims and Allowed Class 2 Claims will receive payment from the Liquidating

6    Trustee in full in Cash or as otherwise noted in the Plan.

7        Each Holder of an Allowed Class 3 Claims will receive, as soon as practicable in the

8    discretion of the Liquidating Trustee a Pro Rata Share of the Available Cash (the "Initial Class 3

9    Distribution").  In addition, after the Initial Class 3 Distribution but prior to the Final Distribution

10   Date, the Disbursing Agent shall, but is not required, to make Pro Rata interim distributions (the

11   "Interim Distributions") of Available Cash to the Holders of Allowed Class 3 Claims, when, in the

12   discretion of the Liquidating Trustee, the Liquidating Trust has sufficient Available Cash to make

13   such Interim Distributions.  Pro Rata distributions relating to Disputed Claims will be placed in the

14   Disputed Claims Reserve.  Based upon the Debtor's estimate of the total General Unsecured

15   Claims in Class 3 of approximately $54,043,491 ~~——————~~ and the Debtor's estimate of

16   the Available Cash, the Trustee estimates that holders of Allowed Claims in Class 3 will receive a

17   percentage recovery of approximately ~~————~~ 2.0% of the face amount of their Allowed

18   Claims.[9]  The actual percentage recovery will vary depending upon, among other things, the actual

19   amount of Allowed Claims and the actual amount of Available Cash realized, such that the actual

20   recovery may be different than the Debtor's estimate. Based upon the Debtor's estimates, the

21   Available Cash are not sufficient to pay the Allowed Class 3 Claims in full. See Exhibit "B" to this

22   Disclosure Statement.

23       Class 4 Claims are unsecured claims.  Class 4 consists of the Indenture Trustee Claims that

24   may be contractually or otherwise subordinate to the Allowed FTBN Claim and/or other Class 4

25   Claims and unpaid Indenture Trustee Fees.  Subject to Section II.C(4)(c) and the provisions of the

26   Plan related to the payment of the Indenture Trustee Fees, each Holder of a Class 4 Claim shall be

27

28   _____
     [9] This estimate does not take into account any proceeds of, or costs of recovery of, the Debtor's Tax Refund Claims,
     Estate Causes of Action or D&O Claims, all of which remain unknown at this time.

LANDAU & BERGER
LLP

cancelled and shall represent only the right to receive the distributions to which the holder is entitled under this Plan.

**5.    Provision For Allowance Of the Indenture Trustee Claims.**

As set forth in further detail in Section IV.A. of the Plan, a beneficial owner of the Debentures~~Indenture Securities under the Indentures~~ of record as of January 22, 2010 (the "Record Date") shall, for purposes of distributions under the Plan, be deemed to have an Allowed Class 4 Claim for the outstanding principal amount of the ~~Indentures~~Debentures owned by such beneficial owner plus accrued and unpaid interest as of the Petition Date, and need not file a proof of claim with respect thereto, subject to the aggregate amount of Allowed Class 4 Claims as provided for in the Plan.

With respect to distributions to be made to holders of the Debentures~~Indenture Securities under the Indentures~~ classified in Class 4, the Indenture Trustees shall (i) be the Disbursing Agent, (ii) receive the consideration to be paid to holders of Indenture Securities under the Indentures as Indenture Trustees for the respective Indentures which are classified as Allowed Class 4 Claims; (iii) be responsible for making distributions to holders of Allowed Class 4 Claims arising from such Debentures~~Indentures~~; and (iv) be authorized to deduct the Indenture Trustee Claims from the consideration provided to holders of Allowed Class 4 Claims ~~arising from such Indentures~~ to the extent so provided for in the Indentures.

**6.    Establishment Of The Post-Confirmation Committee.**

As set forth in Section VI of the Plan, until the Effective Date, the Committee shall continue in existence.  As of Effective Date, the Committee shall terminate and disband.   As provided in the Plan and Liquidating Trust Agreement, as of the Effective Date, there will be formed a committee for the Liquidating Trust (the "Post-Confirmation Committee") that will have consultation, approval and information rights with respect to the Liquidating Trust as set forth in the Liquidating Trust Agreement.  The members of the Post-Confirmation Committee will be those members of the Committee who wish to continue to serve.  Ten days prior to the Confirmation Hearing, the Committee shall file with the Bankruptcy Court and serve on those requesting notice

1    appropriate, without need for Bankruptcy Court approval.  Reasonable expense may include

2    reimbursement of the fees and costs of attorneys to each member, including the payment of

3    Indenture Trustee Fees as provided for in the Plan, subject to such parameters as determined by the

4    Post-Confirmation Committee and which parameters are agreed to by the Liquidating Trustee.

5            The Post-Confirmation Committee will have no authority to employ, at the expense of the

6    Liquidating Trust, counsel or any other professionals, except upon petition to and approval by the

7    Bankruptcy Court for cause shown.  The Post-Confirmation Committee and its members will not

8    be liable for any act any member may do or fail to do as a member of the Post-Confirmation

9    Committee while acting in good faith and in the exercise of the member's best judgment.  No

10   member of the Post-Confirmation Committee will be liable in any event for claims, liabilities or

11   damages unless they arise from such member's personal gross negligence or willful misconduct.

12                          **7.    Resolution of Disputed Claims.**

13           As set forth in Section IV of the Plan, after the Effective Date and subject to the provisions

14   of the Plan and Liquidating Trust Agreement, the Liquidating Trustee will review all Claims and

15   determine if any grounds exist to object to such Claims.  Only Allowed Claims will be paid.

16   Distributions relating to Disputed Claims will be placed into the Disputed Claims Reserve until

17   such time as such Disputed Claim is adjudicated or otherwise settled.  Any Disputed Claim that

18   becomes an Allowed Claim after the Effective Date will be paid from the Disputed Claims

19   Reserve.  If such Disputed Claim fails to become an Allowed Claim, money placed in the Disputed

20   Claims Reserve on behalf of such Disputed Claim shall be deemed to be Available Cash and shall

21   be distributed to holders of Allowed Class 3 Claims, and if appropriate under the Plan, Allowed

22   Class 4 Claims.

23           Additionally, any Claims filed by the Debtor's officer and directors seeking

24   indemnification from the Debtor pursuant to employment agreements, by-laws or otherwise, shall

25   be channeled, subject to any defenses thereto and 11 U.S.C. 510(b) & (c), to the Debtor's

26   applicable 2008 and 2009 directors' and officers' insurance policies including but not limited to:

27   (a) Lexington Directors and Officers Insurance and Company Reimbursement Policy, Policy No.

28   001621301; (b) XL Specialty Insurance Excess Directors and Officers, Policy No. ELU109215-08;

LANDAU & BERGER
LLP

52
EXHIBIT D
18

(c) AIG (National Fire) Executive Liability, Policy No. 734-17-82; (d) AIG (National Fire) Executive Liability, Policy No. 00-734-17-82, (e) St. Paul (Traveler's) SelectOne for Community Banks, Policy No. EC06100041, and (f) St. Paul (Traveler's) SelectOne for Community Banks, Policy No. EC06100041.

### 8. Distributions Under The Plan.

#### (a) General Provisions.

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court, distributions to be made on the Effective Date on account of Allowed Claims, other than Allowed Class 3 Claims and Allowed Class 4 Claims, shall be made on the Effective Date or as soon as practicable thereafter. Each Holder of an Allowed Class 3 Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, a Pro Rata Share of the Available Cash (the "Initial Class 3 Distribution"). Each Holder of a Class 4 Claim shall be allocated a Pro Rata share of each Distribution available to Holders of Class 3 Claims; provided, however, that the amount of distributions to Holders of Allowed Class 4 Claims, subject to Section II.C(4)(c), shall be paid (i) first on account of unpaid Indenture Trustee Fees, and (ii) second on account of the Allowed FTBN Claim, until such time as the Allowed FTBN Claim is satisfied in full, after which time distributions to Holders of Allowed Indenture Trustee Claims shall be made. Notwithstanding the above, no distributions will be made on a Claim unless it is an Allowed Claim or in the case of a Disputed Claim an order of the Bankruptcy Court has been entered estimating the Claim for purposes of distribution; and, provided further, however, distributions on Allowed Claims may be delayed as a result of, or the allowance or estimation of, Disputed Claims, or the expiration of time for filing a proof of claim.

#### (b) Delivery of Distributions, Address of Holder.

For purposes of all notices and distributions under the Plan, the Liquidating Trustee shall be entitled to rely on the name and address of the Holder of each Claim as shown on, and distributions to Holders of Allowed Claims shall be made by regular U.S. first class mail to, the following addresses: (a) at the addresses set forth in the proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtor or to the

1   Hearing with respect to the Plan is scheduled to commence as set forth in the Confirmation Notice

2   included in the solicitation materials and served on all creditors and parties in interest.  At the

3   confirmation hearing, the Debtor will request the Bankruptcy Court to confirm the Plan on the

4   basis that all confirmation requirements have been satisfied.

5        **A.      Voting; Acceptance.**

6        Any Holder of a Claim in an impaired Class is entitled to vote if either (i) such Holder's

7   Claim has been scheduled by the Debtor in the Schedules filed with the Bankruptcy Court

8   (provided that such Claim has not been scheduled as disputed, contingent, unknown, or

9   unliquidated), or (ii) such Holder has filed a proof of Claim on or before the deadline previously

10  fixed by the Bankruptcy Court and such Claim is deemed allowed pursuant to section 502 of the

11  Bankruptcy Code or has been allowed by the Bankruptcy Court, unless such Claim has been

12  disallowed for voting purposes by the Bankruptcy Court, or is allowed under the Plan.  The Record

13  Date for determining which Holders of the Debentures and Trust Securities~~Indenture Securities~~

14  ~~under the Indentures~~ is a "Record Holder," will be January 22, 2010.  A vote may be disregarded if

15  the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was

16  not solicited or procured or made in good faith or in accordance with the provisions of the

17  Bankruptcy Code.

18       The Voting Classes of Claims will be deemed to have accepted the Plan if the Plan is

19  accepted by Holders of at least two-thirds in dollar amount and more than one-half in number of

20  the Claims of such Class (excluding certain Claims designated under section 1126(e) of the

21  Bankruptcy Code) that will have voted to accept or reject the Plan.

22       THE INDENTURE TRUSTEES ARE NOT PERMITTED TO VOTE ON BEHALF OF

23  THE HOLDERS OF THE DEBENTURES.  FOR PURPOSES OF VOTING, THE BENEFICIAL

24  HOLDER OF A CAPITAL SECURITY AND A DEBENTURE DUE 2017 SHALL BE

25  TREATED AS THE HOLDER OF ITS RESPECTIVE SHARE OF INDENTURE TRUSTEE

26  CLAIMS AND SHALL BE ENTITLED TO VOTE WITH RESPECT TO THE PLAN.

27  CONSEQUENTLY, THE DEBTOR WILL SEND A BALLOT DIRECTLY TO SUCH

28  BENEFICIAL HOLDER AND SUCH BENEFICIAL HOLDER MUST SUBMIT ITS OWN

LANDAU & BERGER
LLP

1    BALLOT IN ACCORDANCE WITH THE TERMS OF THE RELEVANT INDENTURES IN

2    ORDER FOR ITS VOTE TO COUNT.

3         Classes 3 and 4 are the only Voting Classes because Classes 1 and 2 are not impaired and

4    therefore are deemed to accept the Plan and Classes 5 and 6 are impaired but deemed to reject the Plan

5    because they will not receive a distribution under the Plan.

6         **B.    Confirmation Hearing.**

7         Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to

8    hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  The Confirmation

9    Hearing may be postponed from time to time by the Bankruptcy Court without further notice

10   except for an announcement of the postponement made at the Confirmation Hearing.  Section

11   1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of

12   the Plan.  Objections must be made in writing, specifying in detail the name and address of the

13   person or entity objecting, the grounds for the objection, and the nature and amount of the Claim or

14   Equity Interest held by the objector, and otherwise complying with the requirements of the

15   Bankruptcy Rules and Local Bankruptcy Rules.  Objections must be filed and served pursuant to

16   the Confirmation Notice in the manner set forth therein, on or before the time and date designated

17   in the Confirmation Notice as being the last date for serving and filing objections to confirmation

18   of the Plan.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND

19   FILED IN ACCORDANCE WITH THE CONFIRMATION NOTICE, IT MAY NOT BE

20   CONSIDERED BY THE BANKRUPTCY COURT.  AS SET FORTH IN THE

21   CONFIRMATION NOTICE, THE BANKRUPTCY COURT MAY NOT CONSIDER ANY

22   OBJECTIONS THAT ARE NOT TIMELY RAISED.

23        At the Confirmation Hearing, the Bankruptcy Court will determine, among other things,

24   whether the following confirmation requirements specified in section 1129 of the Bankruptcy

25   Code have been satisfied:

26             1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

27             2.    The Debtor has complied with the applicable provisions of the Bankruptcy

28   Code.

LANDAU & BERGER
LLP

### A.    Liquidation Under Chapter 7.

If no plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.  A discussion of the effects that a chapter 7 liquidation would have on the recovery by holders of Claims and Equity Interests is set forth in Section VI.D of the Disclosure Statement entitled "Best Interests Test."

### B.    Alternative Plan Of Liquidation.

If the Plan is not confirmed, the Debtor could attempt to formulate a different plan.  With respect to an alternative plan, the Debtor has explored various other alternatives in connection with the extensive negotiation process involved in the formulation and development of the Plan, but concluded that the Plan provides the best feasible recoveries attainable under the circumstances. The Plan provides for an orderly disposition of the assets of the Estate on a timetable, and on terms, which maximizes the value of the Estate.  Any alternative, liquidation under chapter 11 or under chapter 7, is likely to result in a lower recovery.

THE DEBTOR AND THE COMMITTEE BELIEVE THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED HEREIN BECAUSE IT IS EXPECTED TO PROVIDE GREATER RECOVERIES AND INVOLVE LESS DELAY AND UNCERTAINTY AND LOWER ADMINISTRATIVE COSTS.

## VIII.    VOTING PROCEDURES

The Debtor is providing copies of the Confirmation Notice, this Disclosure Statement, the Plan, and/or Ballots or master ballots ("Master Ballots"), as applicable, to all known Holders of impaired Claims in the Voting Classes, including registered holders as of the Record Date of the Debentures~~Indenture Securities under the Indentures~~ (or, if applicable, to those holders who are listed as participants in a clearing agency's position).  Registered holders may include brokerage firms, commercial banks, trust companies, or other nominees (the "Nominees").  If such Nominees do not hold for their own account, they should follow the procedures described in Section VIII.B

LANDAU & BERGER
LLP

1    prior to the Voting Deadline, unless an order of the Bankruptcy Court is entered after notice and a

2    hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule

3    3018(a);

4                7.        If a Claim holder identifies a Claim amount on its Ballot that is less than the

5    amount otherwise calculated in accordance with the Tabulation Rules, the Claim will be

6    temporarily allowed for voting purposes in the lesser amount identified on such Ballot; and

7                8.        If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-

8    in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity,

9    such person should indicate such capacity when signing.

10

11    **B.        Special Provisions With Respect To Voting By Beneficial Owners Of The
       Indenture Securities; Instructions For Nominees.**

12    Beneficial owners who are also Record Holders should complete their Ballots and return

13    them directly to the Ballot Tabulator by the Voting Deadline. Beneficial owners who are not the

14    Record Holders on the Record Date (meaning they hold their securities in "street name") shall be

15    directed to vote on the Plan through their respective Record Holders ("Nominees"). Nominees are

16    directed to (a) promptly provide copies of the Disclosure Statement, the Plan, Confirmation Notice

17    and the Ballot to the beneficial owners who are the Nominee's customers ("Customers") or are the

18    beneficial owners for whose account such Nominee holds, and (b) request such beneficial owners

19    vote on the Plan by executing a Ballot. The Nominee can either (i) execute the Ballots in blank and

20    forward them to their Customers and advise the Customers to vote and forward their completed

21    Ballot directly to the Ballot Tabulator or (ii) collect the completed Ballots of its Customers and

22    execute a Master Ballot. If the Nominee is collecting the Ballots of its Customers, the Nominee is

23    directed to instruct its Customers to return their Ballots to the Nominee and the Nominee will use

24    the Master Ballot to compile the votes of the beneficial owners who return executed Ballots. The

25    Ballot Tabulator will forward the Nominees a form of Master Ballot and a form of communication

26    to their Customers and beneficial owners, which includes a Ballot form which the beneficial

27    owners will use to instruct the Nominees how to cast their votes for or against the Plan.

28

LANDAU & BERGER
LLP

1 ~~Nominees are to record all such acceptances or rejections of the Plan received from the~~

2 ~~beneficial owners, complete a Master Ballot indicating the vote of each beneficial holder and the~~

3 ~~total principal amount of Indentures held by such beneficial holders for which it received Ballots,~~

4 ~~and return the Master Ballot to the Ballot Tabulator by the Voting Deadline.  The Nominee is also~~

5 ~~required to retain all Ballots it receives from its beneficial owners for disclosure to the Bankruptcy~~

6 ~~Court, if necessary.~~

7 ~~A beneficial owner whose Indenture Securities were registered in its own name on the~~

8 ~~Record Date and not held by another as Record Holder will be directed to use the Master Ballot or~~

9 ~~Ballot to cast its own vote.~~

10 ~~Beneficial owners of Indenture Securities who acquired such securities after the Record~~

11 ~~Date and who wish to vote on the Plan must arrange to vote with their transferors by delivery to~~

12 ~~them of Ballots duly executed in blank by (or a duly executed proxy from) the beneficial owners of~~

13 ~~the securities on the Record Date.~~

14 As stated above, the Indenture Trustees are not permitted to vote on behalf of the beneficial

15 holders of the Debentures.  Accordingly, the Debtor shall retain an appropriate noticing agent to

16 (a) provide such beneficial holders (or their Nominees, if held in "street name") with copies of the

17 Disclosure Statement, the Plan, Confirmation Notice and the Ballot ("Solicitation Package"), and

18 (b) request that such Nominees (if held in "street name") distribute to such beneficial holders the

19 Solicitation Package , and (c) such holders shall vote on the Plan in accordance with the terms of

20 the relevant Indentures.

21 **IX.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

22 **A.    Introduction.**

23 The following discussion summarizes certain federal income tax consequences of the

24 implementation of the Plan to the Holders of Class 3 Claims and Class 4 Claims.  The following

25 summary does not address the federal income tax consequences to Holders of any other Claims

26 and Claims that are not Impaired by the Plan, or to Holders of Equity Interest.  The following

27 summary is based on the Internal Revenue Code of 1986, as amended (the "Code"), Treasury

28 regulations promulgated and proposed thereunder, judicial decisions and published administrative

LANDAU & BERGER
LLP

65
EXHIBIT D
24

**XII.    RECOMMENDATION AND CONCLUSION**

The Debtor and the Committee believe that confirmation and implementation of the Plan are preferable to any of the feasible alternatives because the Plan will provide substantially greater recoveries for holders of Claims.  Accordingly, the Debtor and the Committee urge holders of Claims in the Voting Classes to accept the Plan.

DATED: _____          DEBTOR AND DEBTOR-IN-POSSESSION
                                      VINEYARD NATIONAL BANCORP


                                      By: _____
                                          Donald H. Pelgrim, Jr.
                                          Executive Vice President and Chief
                                          Administrative Officer



**SUBMITTED BY:**

LANDAU GOTTFRIED & BERGER LLP


By: _____
    JON L.R. DALBERG
    Attorneys for Debtor Vineyard National Bancorp

EXHIBIT E

1    JON L. R. DALBERG (State Bar No. 128259)
     RODGER M. LANDAU (State Bar No. 151456)
2    SHARON M. KOPMAN (State Bar No. 164449)
     LANDAU GOTTFRIED & BERGER LLP
3    1801 Century Park East, Suite 1460
     Los Angeles, California  90067
4    Telephone: (310) 557-0050
     Facsimile: (310) 557-0056
5    jdalberg@lblawllplgbfirm.com
     rlandau@lblawllplgbfirm.com
6    skopman@lblawllpgbfirm.com

7    Counsel for Vineyard National Bancorp

8    ROBERT A. JULIAN (State Bar No. 88469)
     TODD J. DRESSEL (State Bar No. 220812)
9    WINSTON & STRAWN LLP
     101 California Street, 39th Floor
10   San Francisco, California 94111-5802
     Telephone No.: (415) 591-1000
11   Facsimile No.: (415) 591-1400
     rjulian@winston.com
12   tdressel@winston.com

13   Counsel for the Official Committee of
     Unsecured Creditors

14

15             UNITED STATES BANKRUPTCY COURT

16         FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                 RIVERSIDE DIVISION

18   In re                          Case No.  6:09-bk-26401-RN

19   VINEYARD NATIONAL BANCORP,
                           Chapter 11

20          Debtor.              **JOINT PLAN OF LIQUIDATION OF**

21                             **DEBTOR AND THE OFFICIAL**
                               **COMMITTEE OF UNSECURED**
22                         **CREDITORS**

23

24

25

26

27

28

53.    "Indenture Trustee Fees" means the claims for payment of the reasonable expenses, disbursements and advances (including the reasonable compensation, expenses and disbursements of their respective agents and counsel) incurred by the Indenture Trustees, whether accrued prior to or after the Petition Date, or prior to or after the Effective Date.

54.    "Indenture Trustees" means, collectively, the Statutory Trust Trustees and the Junior Subordinated Indenture Trustee.

55.    "Junior Subordinated Indenture" means the Indenture dated as of December 19, 2002 between Debtor and the Junior Subordinated Indenture Trustee authorizing the issuance of the Junior Subordinated Debentures Due December 26, 2017. .

56.    "Junior Subordinated Indenture Trustee" means U.S. Bank as successor Trustee to State Street Bank under the Junior Subordinated Indenture.

57.    "Liquidating Trust" means the trust created pursuant to the Plan, Confirmation Order, and the Liquidating Trust Agreement, and created for the benefit of Holders of all Allowed Claims. Except as otherwise expressly provided in the Plan, all of the Assets of the Debtors will be transferred to the Liquidating Trust on the Effective Date of the Plan.  The Liquidating Trust will continue and conclude the liquidation of such assets and the Debtor, including the resolution of all Estate Causes of Action and the D&O Claims, and make Distributions to the Holders of Allowed Claims and pay the expenses of the Liquidating Trust, all as provided in the Plan.

58.    "Liquidating Trust Agreement" means that certain liquidating trust agreement by and between the Debtor and the Liquidating Trustee to be entered into pursuant to the Plan and the Confirmation Order, substantially in the form included in Exhibit "3", as may be amended from time to time.

59.    "Liquidating Trust Assets" means any and all Assets of the Debtor and Estate, including Cash, Estate Causes of Action, D&O Claims, and other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date of the Plan, free and clear of any liens or claims that might otherwise have existed in favor of any party.

60.    "Liquidating Trustee" means Bradley D. Sharp of Development Specialists, Inc.————, or any other person approved by the Court as Liquidating Trustee, and any successor

1    Trustee shall report and pay taxes on the income of the Liquidating Trust Assets, if any, as required

2    by applicable law.  In addition, to the extent required by applicable law, reported distributions from

3    such reserves shall include all interest and investment income, if any, attributable to the Cash or

4    property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

5              **H.      Other Documents And Actions.**

6              The Debtor on and prior to the Effective Date and the Liquidating Trustee after the Effective

7    Date may execute such other documents and take such other actions as may be necessary or

8    appropriate to effectuate the transactions contemplated under this Plan.

9              **I.      Modification Of The Plan.**

10             Prior to the Effective Date, the Plan may be altered, amended, or modified pursuant to

11   section 1127 of the Bankruptcy Code solely upon the mutual agreement between the Debtor and the

12   Committee, unless the other party has withdrawn as a proponent of the Plan.  After the Effective

13   Date, the Liquidating Trustee shall have the sole authority and power to alter, amend, or modify the

14   Plan pursuant to section 1127 of the Bankruptcy Code.

15             **J.      Notices.**

16             Any notice to the Debtor, Liquidating Trustee, Committee, or United States Trustee required

17   or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail,

18   return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery

19   service, freight prepaid, to be addressed as follows:

20   **Debtor**:
     Vineyard National Bancorp
21   4000 Barranca Parkway
     Suite 250
22   Irvine, CA 92604
     Attention: Donald H. Pelgrim, Jr.
23

24   **With a copy to**:
     Landau Gottfried & Berger LLP
25   1801 Century Park East
     Suite 1460
26   Los Angeles, CA 90067
     Attention: Jon L. R. Dalberg
27

28

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
Julie J. Becker
Chairperson,
On Behalf of Wilmington Trust
Company

Presented By:

LANDAU GOTTFRIED & BERGER, LLP

By: _____
Jon L.R. Dalberg
Attorneys for Vineyard National Bancorp

45
EXHIBIT E
28

| In re: VINEYARD NATIONAL BANCORP, | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER 09-26401-RN |

## PROOF OF SERVICE OF DOCUMENT

I, Natalie M. Cereseto, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 1460, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described: **NOTICE OF SUPPLEMENTAL FILING OF (1) EXHIBITS B, C AND E TO DISCLOSURE STATEMENT IN SUPPORT OF THE DEBTOR'S JOINT PLAN OF LIQUIDATION OF THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 5, 2010, I checked the CM/ECF docket for this bankruptcy case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Henkie F Barron    hbarron@winston.com, docketsf@winston.com
Jeffrey W Broker    jbroker@brokerlaw.biz
Jon L Dalberg    jdalberg@lblawllp.com, mprokocki@lblawllp.com
Timothy J Farris    timothy.j.farris@usdoj.gov
Jesse S Finlayson    jfinlayson@faw-law.com, wmills@faw-law.com

☒    Service information continued on attached page

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On January 5, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**BY U.S. MAIL**
Honorable Richard M. Neiter
U.S. Bankruptcy Court
255 East Temple Street, Suite 1652
Los Angeles, CA 90012                    ☒ Service information continued on attached page

**III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 5, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Elise Giles    egiles@firsthorizon.com                    ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 5, 2010 | Natalie M. Cereseto | *UMCereseto* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

3.1                                                                                    F 9013-

| | |
|---|---|
| In re: VINEYARD NATIONAL BANCORP,<br><br>                                                    Debtor. | CHAPTER  11<br><br>CASE NUMBER 09-26401-RN |

**Additional Service Information (if needed):**

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**
Ivan L Kallick     ikallick@manatt.com, ihernandez@manatt.com
Sharon M Kopman     skopman@lblawllp.com, skopman@lblawllp.com;ncereseto@lblawllp.com
Rodger M Landau     rlandau@lblawllp.com, kmoss@lblawllp.com
John W Mills     jmills@kilpatrickstockton.com
Hydee J Mulichak     Hydee.Mulichak@sbgk.com
Marie C Pollio     bankruptcy@goodwin.com
Ramesh Singh     claims@recoverycorp.com
United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

**II. SERVED BY U.S. MAIL**

**Debtor**
Vineyard National Bancorp
4000 Barranca Parkway Suite 250
Irvine, CA 92604

**Creditors Committee**

Julie J. Becker, Vice President
Wilmington Trust Company
50 South Sixth Street, Suite 1290
Minneapolis, MN 55402-1544

J. Chris Mathews, Vice President
The Bank of New York Trust Co., N.A.
601 Travis 16th Floor
Houston, Texas 77002

James H. Byrnes, Vice President
Vineyard Statutory Trust I
One Federal St. 3rd Floor
Boston, MA 02110

Richard Gollis
The Concord Group
130 Newport Center Dr. Suite 230
Newport Beach, CA 92660

**Counsel for Secured Lender FTBN**

Leonard M. Shulman
Shulman, Hodges & Bastian LLP
26632 Towne Centre Drive, Suite 300
Foothill Ranch, CA  92610

**The United States Trustee**

The Office of the United States Trustee
Attn Timothy J Farris
3685 Main St Ste 300
Riverside, CA 92501

**Counsel to Creditor's Committee**

Robert A. Julian, Esq.
Todd J. Dressel, Esq.
Winston & Strawn LLP
 101 California Street
 San Francisco, CA 94111-5894

Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

*Special Notice List*

Litigation Counsel to Debtor

John C. Grosvenor
Manatt, Phelps & Phillips, LLP
695 Town Center Drive
Costa Mesa, California 90064

Securities and Exchange Commission
Attn: Sarah D. Moyed
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036

Counsel for Wilmington Trust Co.
Todd C. Meyers, Esq.
Sameer K. Kapoor, Esq.
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530

Joseph G Pribyl
1467 8th Ave SE
Forest Lake, MN 55025

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                              **F 9013-**
**3.1**